Filed 6/13/24  P. v. Keith CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN ALAN KEITH,<br><br>    Defendant and Appellant. | G062211<br><br>(Super. Ct. No. C-44185)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Cheri T. Pham, Judge.  Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Maxine Hart, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant John Alan Keith was convicted of, among other offenses, special circumstances murder and sentenced to life in prison without the possibility of parole (LWOP). He was 21 years old at the time he committed the crimes. Decades later, he filed a motion in the trial court seeking a *Franklin/Cook* proceeding.[1] The trial court denied the motion, concluding Keith was ineligible for a youth offender parole hearing (YOPH) because he was a young adult offender[2] sentenced to LWOP. (Pen. Code, § 3051, subd. (h) (all undesignated statutory references are to this code).)

On appeal, Keith asserts the exclusion of young adult offenders sentenced to LWOP from eligibility for YOPHs violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and the California Constitution (Cal. Const., art. I, § 7, subd. (a)). He argues there is no rational basis for treating young adult offenders sentenced to LWOP differently from two groups who are eligible for YOPHs: (1) young adult offenders sentenced to parole-eligible life imprisonment or de facto LWOP; and (2) juvenile offenders sentenced to LWOP. While there previously was a split of authority regarding the first issue, the California Supreme Court recently resolved the split and concluded there is no equal protection violation for the exclusion of young adult offenders sentenced to LWOP for special circumstance murder. (*People v. Hardin* (2024) 15 Cal.5th 834, 838–840 (*Hardin*).) The California Supreme Court did not directly address the latter issue, but another panel of this court previously found no equal protection violation because a rational basis exists for treating these two populations differently under the law. (*People v. Acosta* (2021) 60 Cal.App.5th 769, 779–

---

[1] Under *People v. Franklin* (2016) 63 Cal.4th 261 and *In re Cook* (2019) 7 Cal.5th 439, this proceeding allows a defendant to develop and preserve evidence to eventually use at a youth offender parole hearing.

[2] For brevity and clarity, this opinion refers to individuals who committed a crime while under the age of 18 as "juvenile offenders" and individuals who committed a crime between the ages of 18 and 25 as "young adult offenders."

780 (*Acosta*).) We agree with *Acosta* and likewise find no equal protection violation here. We also disagree with Keith's other argument that his exclusion from a YOPH and LWOP sentence violate the California Constitution's prohibition against cruel or unusual punishment. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1981, a jury convicted Keith of first degree murder (§ 187), robbery (§ 211), and residential burglary (§ 459). The jury also found true special circumstances allegations the murder was committed in the commission of a robbery and a residential burglary (§ 190.2). Keith was 21 years old when he committed the crimes. He was sentenced to LWOP.

In November 2022, Keith filed a motion in the trial court for a *Franklin/Cook* proceeding and appointment of counsel. Keith argued the exclusion of young adult offenders sentenced to LWOP from YOPHs violated equal protection. He also asserted this exclusion and his LWOP sentence violated the California Constitution's prohibition against cruel or unusual punishment. The trial court denied the motion. The trial court concluded Keith was "statutorily ineligible for a [YOPH] because he stands convicted as an adult offender of special circumstances first degree murder sentenced to [LWOP]." The trial court rejected Keith's equal protection and cruel or unusual punishment arguments.[3]

DISCUSSION

"California's youth offender parole statute offers opportunities for early release to certain persons who are incarcerated for crimes they committed at a young age." (*Hardin, supra*, 15 Cal.5th at p. 838.) The statute provides, among other things,

---

[3] The trial court also found Keith failed to include a proof of service. On appeal, the Attorney General does not contend we should affirm because of the failure to include a proof of service. As we affirm for other reasons discussed *post*, we need not address the proof of service issue.

that juvenile offenders sentenced to LWOP are "eligible for release on parole at a [YOPH] during the person's 25th year of incarceration." (§ 3051, subd. (b)(4).) While "most [young adult offenders] are entitled to a parole hearing during the 15th, 20th, or 25th year of their incarceration" (*Hardin, supra*, 15 Cal.5th at p. 838), certain young adult offenders are not eligible for a YOPH. As relevant here, section 3051, subdivision (h) excludes from YOPH eligibility an individual "sentenced to [LWOP] for a controlling offense that was committed after the person had attained 18 years of age." (See *Hardin, supra*, 15 Cal.5th at pp. 838–839.)[4]

Keith does not dispute that, pursuant to section 3051, subdivision (h), he is ineligible for a YOPH because he was sentenced to LWOP for an offense he committed when he was 21 years old. Instead, Keith argues the exclusion of young adult offenders sentenced to LWOP from YOPH eligibility violates equal protection and the prohibition against cruel or unusual punishment in the California Constitution. As discussed *post*, Keith's arguments are unavailing.

## I.

### EQUAL PROTECTION

"'The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the equal protection of the laws.'" (*Acosta, supra*, 60 Cal.App.5th at p. 778.) Courts previously have applied a two-part inquiry to equal protection claims. (*Hardin, supra*, 15 Cal.5th at p. 841.) However, in *Hardin, supra*, 15 Cal.5th at pages 850–851, the California Supreme Court recently explained, "when plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection," "[t]he only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is

---

[4] "'Controlling offense' means the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).)

on the party challenging the law to show that it is not."[5]  We independently review Keith's challenge to section 3051 as offending constitutional guarantees of equal protection.  (*Jackson, supra,* 61 Cal.App.5th at p. 195.)

Keith does not dispute the rational basis standard of review is applicable here.  "Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.'"  (*Hardin, supra*, 15 Cal.5th at p. 852.)  Additionally, "[t]he underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.'"  (*Ibid.*)  As the California Supreme Court has explained, "a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.]  'If a plausible basis exists for the disparity, courts may not second-guess its "'wisdom, fairness, or logic.'"' [Citation.]  '[T]he logic behind a potential justification need [not] be persuasive or sensible—rather than simply rational.'"  (*Ibid.*, fn. omitted; third and fourth brackets in original.)  Here, Keith argues section 3051's denial of YOPHs to young adult offenders sentenced to LWOP violates equal protection.

First, Keith argues there is no rational basis for excluding young adult offenders sentenced to LWOP from YOPHs while making YOPHs available to young adult offenders sentenced to life in prison or de facto LWOP.  There previously was a split of authority on this equal protection issue, whereby a panel of this court in *Acosta, supra*, 60 Cal.App.5th at pages 780–781, along with several other appellate courts, rejected similar arguments and concluded there was no equal protection violation.  (See *Hardin, supra*, 15 Cal.5th at p. 842, fn. 1.)  However, while this appeal was pending, in

---

[5]  "'The California equal protection clause offers substantially similar protection to the federal equal protection clause.'"  (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195 (*Jackson*).)

*Hardin, supra*, 15 Cal.5th at pages 839–842, the California Supreme Court resolved the split, reversing "[t]he Court of Appeal [which] was the first to conclude that section 3051's exclusion of young adults sentenced to life without parole violated equal protection" (*id.*, at p. 842, fn. 1).

In *Hardin*, the defendant, who was sentenced to LWOP for a special circumstance murder he committed when he was 25 years old, challenged his exclusion under section 3051 as violating equal protection. (*Hardin, supra*, 15 Cal.5th at pp. 839, 846–847.) The California Supreme Court "conclude[d] that Hardin has not demonstrated that . . . section 3051's exclusion of young adult offenders sentenced to life without parole is constitutionally invalid under a rational basis standard, either on its face or as applied to Hardin and other individuals who are serving [LWOP] sentences for special circumstance murder." (*Id.* at p. 839.) As the Supreme Court explained, "special circumstance murder is a uniquely serious offense, punishable only by death or [LWOP,]" and "[w]hen it was considering whether to expand the youth offender parole system to include not only juvenile offenders but also certain young adults, the Legislature could rationally balance the seriousness of the offender's crimes against the capacity of all young adults for growth, and determine that young adults who have committed certain very serious crimes should remain ineligible for release from prison." (*Ibid.*) Given the California Supreme Court's holding in *Hardin*, Keith's argument fails.[6]

Second, Keith asserts there is no rational basis for excluding young adult offenders sentenced to LWOP from YOPHs but including juvenile offenders sentenced to

_____

[6] While *Hardin* did not "resolve . . . the constitutionality of section 3051, subdivision (h) as it might arise in other as-applied challenges based on particular special circumstances or the factual circumstances of individual cases[,]" Keith has not made any equal protection arguments based on his specific special circumstances or factual circumstances. (*Hardin, supra*, 15 Cal.5th at p. 864.) As in the instant case, the special circumstance at issue in *Hardin* was murder during the commission of a robbery. (*Hardin, supra*, 15 Cal.5th at p. 840.)

LWOP.  This argument was not directly addressed in *Hardin*.[7]  (*Hardin, supra*, 15 Cal.5th at pp. 840–841, 846.)  But a panel of this court has previously concluded "there is a rational basis for distinguishing between juvenile LWOP offenders and young adult LWOP offenders:  their age."  (*Acosta, supra*, 60 Cal.App.5th at p. 779.)  The *Acosta* court explained:  "Section 3051 has always excluded young adult LWOP offenders, and until 2017 it also excluded juvenile LWOP offenders.  Section 3051 now affords a [YOPH] to juvenile LWOP offenders to comply with *Montgomery* [*v. Louisiana* (2016) 577 U.S. 190] without resorting to costly resentencing hearings.  [Citation.]  The Legislature declined to include young adult LWOP offenders in this amendment, presumably because *Montgomery* did not compel such treatment for young adults."  (*Acosta, supra*, 60 Cal.App.5th at pp. 779–780.)

Thus, the appellate court in *Acosta* concluded "[t]he Legislature . . . had a constitutionally sufficient basis for distinguishing juvenile LWOP offenders from young adult LWOP offenders."  (*Acosta, supra*, 60 Cal.App.5th at p. 780.)  Keith's arguments do not convince us to diverge from the conclusion reached in *Acosta*.  Indeed, other appellate courts have reached the same conclusion.  (See, e.g., *Jackson, supra*, 61 Cal.App.5th at pp. 196–197 [rejecting equal protection argument because "both the United States Supreme Court and our [California Supreme Court] have repeatedly found the bright-line drawn between juveniles and nonjuveniles to be a rational one when it comes to criminal sentencing"]; *In re Murray* (2021) 68 Cal.App.5th 456, 463–464 [rejecting equal protection argument and recognizing, "[w]hen it comes to criminal sentencing, the United States and California Supreme Courts have found the line drawn between juveniles and nonjuveniles to be a rational one"].)

---

[7] The Court of Appeal in *Hardin* had rejected this argument, which the defendant did not challenge in the Supreme Court.  (*Hardin, supra*, 15 Cal.5th at pp. 840–841, 846.)

In sum, Keith's equal protection arguments are unavailing. While the court in *Acosta* previously expressed some reservations about the equal protection analysis discussed *ante*, "we cannot insert our own policy concerns into the analysis. As noted, '[e]qual protection analysis does not entitle [us] to second-guess the wisdom, fairness, or logic of the law.'" (*Acosta, supra*, 60 Cal.App.5th at p. 781.)

## II.

### CRUEL OR UNUSUAL PUNISHMENT

The California Constitution prohibits "[c]ruel or unusual punishment[.]" (Cal. Const., art. I, § 17.)[8] "[A] sentence will not be found unconstitutional under the California Constitution unless it is so disproportionate to the defendant's crime and circumstances that it shocks the conscience or offends traditional notions of human dignity." (*People v. Perez* (2016) 3 Cal.App.5th 612, 616 (*Perez*).) The California Supreme Court has described three "techniques" to aid in determining whether a sentence is so disproportionate that it is unconstitutional: (1) "examin[ing] the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; (2) "compar[ing] the challenged penalty with the punishments prescribed in the same jurisdiction for different offenses which, by the same test, must be deemed more serious"; and (3) "compar[ing] . . . the challenged penalty with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision." (*In re Lynch* (1972) 8 Cal.3d 410, 425–427, italics omitted (*Lynch*).) "'Whether a punishment is cruel or unusual is a question of law for the

---

[8] The California Constitution prohibits "cruel or unusual" punishment and the United States Constitution prohibits "cruel and unusual" punishment. "'The distinction in wording is "purposeful and substantive rather than merely semantic."'" (*People v. Baker* (2018) 20 Cal.App.5th 711, 723.) But "[t]here is considerable overlap in the state and federal approaches. 'Although articulated slightly differently, both standards prohibit punishment that is "grossly disproportionate" to the crime or the individual culpability of the defendant.'" (*Id.* at p. 733.)

appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment.'" (*People v. Gomez* (2018) 30 Cal.App.5th 493, 499.)

On appeal, Keith does not focus on any of the disproportionality techniques. Instead, he argues the exclusion of young adult offenders sentenced to LWOP from YOPHs violates the California Constitution's prohibition against cruel or unusual punishment because a mandatory LWOP sentence for any young adult offender is categorically cruel and excessive. In his opening brief, Keith recognizes "the Eighth Amendment [to the United States Constitution] has so far been construed to bar mandatory LWOP only for minors," but he asserts "California recognizes the scientific principles that extend mitigated culpability up to the age of 25." According to Keith, under the framework of *Lynch, supra*, 8 Cal.3d 410, "mandatory LWOP for a 21-year old offender 'shocks the conscience' because California has accepted the science generally establishing reduced culpability for offenders up to the age of 25."

In *Miller v. Alabama* (2012) 567 U.S. 460, 465 (*Miller*), the United States Supreme Court held "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" In *Acosta, supra*, 60 Cal.App.5th at pages 781–782, a panel of this court declined to extend *Miller* to apply to young adult offenders sentenced to LWOP. (See also *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1030–1032 [recognizing "courts have limited the holdings of *Miller* to cases involving defendants under the age of 18"]; *Perez, supra,* 3 Cal.App.5th at p. 617 [finding "new insights and societal understandings about the juvenile brain" do not require a conclusion that "the bright line of 18 years old in the criminal sentencing context is unconstitutional"]; *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1213, 1220–1221 [concluding an LWOP sentence for a special circumstance murder committed when the defendant was 18 years old did not constitute cruel or unusual punishment under the California Constitution].)

9

The California Supreme Court has also rejected arguments the death penalty is categorically barred for offenders between the ages of 18 to 20 years as cruel or unusual punishment. In *People v. Tran* (2022) 13 Cal.5th 1169, 1234 (*Tran*), the California Supreme Court was not persuaded that "imposing the death penalty on persons for crimes committed while they were 18 to 20 years old violates the state and federal Constitutions because it is cruel and unusual punishment and because a death sentence cannot be reliably imposed on such youthful offenders." The court "observed that 'the [United States Supreme Court] in *Roper* [*v. Simmons* (2005) 543 U.S. 551] recognized that the ""qualities that distinguish juveniles from adults do not disappear when an individual turns 18,""' but nonetheless held that the ""age of 18 is the point where society draws the line for many purposes between childhood and adulthood""' and is ""the age at which the line for death eligibility ought to rest.""""' (*Tran, supra*, 13 Cal.5th at pp. 1234–1235.) Notwithstanding the Legislature's expansion of section 3051 to apply to some young adult offenders, the Supreme Court in *Tran* explained "'these developments do not establish the "national consensus" necessary to justify a categorical bar on the death penalty for individuals between the ages of 18 and 21 at the time of their offenses.'" (*Tran, supra*, 13 Cal.5th at p. 1235.)

Keith also argues "California has cast its net wider than the [United States] Supreme Court in applying the scientific principles concerning the mitigating culpability of youth from beyond juveniles up to the age of 25, in enacting and later amending section 3051 and other penal statutes." However, since the California Supreme Court has found no categorical bar to the imposition of the death penalty for offenders between the ages of 18 to 20, we do not find mandatory LWOP sentences for young adult offenders absolutely prohibited under the California Constitution. (See *In re Williams* (2020) 57 Cal.App.5th 427, 439 [concluding, "[i]f the Eighth Amendment does not prohibit a sentence of death for 21 year olds," then it also "does not prohibit the lesser LWOP sentence"].) The Legislature's decision to permit some, but not all, young adult offenders

to be eligible for a YOPH does not automatically render mandatory LWOP sentences for young adult offenders categorically unconstitutional as cruel or unusual punishment.

## DISPOSITION

The order denying Keith a *Franklin/Cook* proceeding is affirmed.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J.