Filed 5/13/24  P. v. Carter CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAVID NICHOLAS CARTER,<br><br>        Defendant and Appellant. | No. B327576<br><br>(Los Angeles County<br>Super. Ct. No. A563462)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br>**[No change in judgment]** |

The Court:

Appellant's petition for rehearing, filed May 2, 2024, is hereby denied.

It is further ordered that the opinion filed herein on April 18, 2024, is modified as follows:

On page 7, a footnote is inserted with the following language:

Although Carter's opening brief additionally asserted section 3051 violated his right to equal protection by excluding young adult offenders sentenced to LWOP from eligibility while

including juvenile offenders sentenced to LWOP, he failed to develop this argument or distinguish the cases that have previously rejected it; he also did not mention it in his supplemental brief.  However, to the extent Carter continues to assert he has an equal protection claim based on section 3051 treating young adults and juveniles with LWOP sentences differently, we reject the claim.  We agree with the courts that have determined there is a rational basis to treat these two groups differently in the context of section 3051, subdivision (h). (See, e.g., *People v. Bolanos* (2023) 87 Cal.App.5th 1069, 1079, review granted Apr. 12, 2023, S278803; *People v. Sands* (2021) 70 Cal.App.5th 193, 204 ["The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age"].)

All subsequent footnotes are renumbered accordingly.

There is no change in judgment.

EDMON, P. J.            EGERTON, J.            ADAMS, J.

Filed 4/18/24  P. v. Carter CA2/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID NICHOLAS CARTER,<br><br>Defendant and Appellant. | B327576<br><br>(Los Angeles County<br>Super. Ct. No. A563462) |

APPEAL from an order of the Superior Court of Los Angeles County, Jared Moses, Judge.  Affirmed.

William Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott Taryle and Marc Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant David Nicholas Carter appeals from an order denying his motion for a *Franklin/Cook*[1] hearing under Penal Code section 1203.01.[2]  Carter is serving a sentence of life without the possibility of parole for offenses he committed when he was 20 years old.  Carter argues a provision of the youth offender parole statute, section 3051, subdivision (h), violates the guarantees of equal protection under the United States and California Constitutions by excluding from parole consideration individuals sentenced to life without parole for offenses they committed between the ages of 18 and 25.  Although Carter relied on *People v. Hardin* (2022) 84 Cal.App.5th 273, in his appellate briefing, while this appeal was pending, the California Supreme Court reversed the Court of Appeal's decision in the case and held the section 3051, subdivision (h) exclusion does not violate equal protection guarantees.  (*People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*).)  *Hardin* now forecloses Carter's equal protection argument.  However, Carter also contends the section 3051, subdivision (h) exclusion causes his sentence to violate the California Constitution's prohibition against cruel or unusual punishment.  We disagree and affirm the trial court order.

_____

[1]     *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*); *In re Cook* (2019) 7 Cal.5th 439 (*Cook*).

[2]     All further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In 1982, Carter broke into a neighbor's home and sexually assaulted, tortured, and killed her. Carter was 20 years old. A jury convicted Carter of first degree murder (§ 187) and found true the special circumstances that the murder occurred during the commission of a burglary and attempted sodomy (§ 190.2, subd. (a)(17)), and was committed intentionally and with the infliction of torture (§ 190.2, subd. (a)(18)).[4] The trial court imposed a sentence of life without the possibility of parole (LWOP). Carter appealed. A panel of this court affirmed the judgment in an unpublished opinion in 1986.

In 2022, Carter filed a post-judgment motion for a *Franklin/Cook* proceeding. The trial court denied Carter's motion. The court found Carter previously filed an identical motion, which was denied, and he was ineligible for relief due to his conviction for murder with special circumstances and his multiple sex-related offenses. Carter timely appealed.

## DISCUSSION

Carter argues the trial court erred in finding him ineligible for a youth offender parole hearing under *Franklin/Cook*. In

---

[3] We previously granted Carter's request for judicial notice of portions of our earlier nonpublished opinion, *People v. Carter* (Sept. 19, 1986, B008850). We derive the factual background from that prior opinion.

[4] The jury also convicted Carter of other offenses: attempted sodomy (§§ 664, 286 subd. (c)); penetration of genital or anal openings by a foreign object (§ 289); and first degree burglary (§ 459). The jury further found true allegations that Carter was armed with and used a deadly weapon. (§§ 12022.3, 12022, subd. (b).)

3

*Franklin*, the court held that an offender who will later become eligible for a youth offender parole hearing is entitled to a hearing to develop and preserve evidence of youth-related mitigating evidence. (*Franklin*, *supra*, 63 Cal.4th at pp. 283–284.) In *Cook*, the court held that an offender whose sentence is final may obtain a *Franklin* hearing by filing a post-judgment motion. (*Cook*, *supra*, 7 Cal.5th at pp. 458–459.) Section 3051 governs eligibility for the hearing. Section 3051, subdivision (h) excludes individuals "sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person attained 18 years of age."

Carter acknowledges this statutory language excludes him. However, he contends the denial of youth offender parole hearings to persons sentenced to LWOP for crimes committed between the ages of 18 and 25 is unconstitutional.[5]

## I. Section 3051, Subdivision (h), Does Not Violate Carter's Constitutional Right to Equal Protection

Carter first contends the section 3051, subdivision (h) LWOP exclusion, as applied to offenders whose crimes were committed between the ages of 18 and 25, violates the equal protection guarantees of the United States and California Constitutions. The California Supreme Court has rejected this argument.

---

[5] Carter also asserts that the trial court erred in concluding he was ineligible for a *Franklin*/*Cook* hearing based on his convictions for sex-related crimes. The People agree but argue Carter is nonetheless ineligible for relief under section 3051, subdivision (h). As we conclude the trial court correctly found Carter ineligible for relief under section 3051, subdivision (h), we need not address his alternate argument.

4

In *Hardin*, our Supreme Court resolved a division among the Courts of Appeal as to whether section 3051, subdivision (h), violates the Fourteenth Amendment's equal protection guarantee by irrationally discriminating against young adult offenders sentenced to LWOP for special circumstance murder. (*Hardin, supra*, 15 Cal.5th at p. 839.) In *Hardin*, as in this case, the appellant (Hardin) was serving an LWOP sentence for a special circumstance murder he committed between the ages of 18 and 25.[6] (*Ibid*.) Hardin filed a motion to develop and preserve evidence for later use in a youth offender parole hearing under section 3051. (*Id*. at p. 840.) Hardin argued the section 3051, subdivision (h) LWOP exclusion violates equal protection principles. (*Ibid*.) The trial court rejected the argument, but the Court of Appeal reversed. (*Ibid*.)

Our high court concluded the section 3051, subdivision (h) LWOP exclusion of offenders whose crimes were committed after the age of 18 is not irrational or constitutionally invalid. (*Hardin, supra*, 15 Cal.5th at pp. 863–864.) The court reasoned the statute reflects the Legislature's permissible balancing of "multiple considerations, including both concerns about increasing opportunities for release for young adults able to show growth and maturity and concerns about calibrating the level of punishment appropriate for certain serious criminal offenses." (*Id*. at p. 857.) The court further rejected Hardin's argument that "the Legislature could not rationally conclude that a conviction for special circumstance murder is a reliable indication of the seriousness of an offense or the culpability of the offender, such

---

[6]     Hardin was 25 and Carter was 20. Because Carter's argument applies to offenders over 18 years of age but under 26, we do not find this difference material.

5

that it could rationally decide to exclude the offender from receiving the youth offender parole consideration to which other young adults are statutorily entitled." (*Id*. at p. 859.)

The court referenced the many decisions holding that special circumstance murder is "sufficiently serious and morally culpable as to justify imposing the most severe sanctions available under the law, up to and including death," and determined it could not say "that the decision to deny a parole hearing to an offender convicted of special circumstance murder is irrational, even if it is possible that in certain cases some might consider an individual offender convicted of multiple violent crimes more culpable, in a holistic sense, than an individual convicted of special circumstance murder." (*Hardin, supra*, 15 Cal.5th at pp. 859, 863.) The court thus concluded Hardin did not demonstrate "that Penal Code section 3051's exclusion of young adult offenders sentenced to life without parole is constitutionally invalid under a rational basis standard, either on its face or as applied to Hardin and other individuals who are serving life without parole sentences for special circumstance murder." (*Id*. at p. 839.)[7]

The court decided *Hardin* while this appeal was pending. We invited the parties to submit supplemental briefing to address the decision's applicability to this case. (Gov. Code, § 68081.) The People contend *Hardin* forecloses Carter's equal protection

---

[7] Although *Hardin* considered an equal protection claim under the United States Constitution and Carter's claim invokes the state and federal constitutions, our Supreme Court saw " ' "no reason to suppose" that federal equal protection analysis would yield a result different from what would emerge from analysis of the state Constitution.' [Citation.]" (*Hardin, supra*, 15 Cal.5th at p. 847, fn. 2.)

6

claim.  Carter recognizes that *Hardin* "appears to foreclose relief for appellant in this appeal with respect to his equal protection violation claim . . . ."  However, he does not concede the issue in order to preserve any right to relief he may have in federal court and because, at the time of his supplemental brief, the decision in *Hardin* was not yet final.  The decision is now final.

*Hardin* is binding authority we must follow.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  We therefore must reject Carter's equal protection argument.

## II.  Section 3051, Subdivision (h), Does Not Subject Carter to Cruel or Unusual Punishment

Carter next contends the Legislature's denial of youth offender parole hearings to offenders who committed their crimes between the ages of 18 and 25, and are sentenced to LWOP, renders his sentence cruel or unusual punishment under the California Constitution.  He acknowledges the LWOP sentence was constitutionally valid at the time it was imposed.  However, his argument is based on the Legislature's amendments to section 3051, which *Hardin* summarized as follows:  "When it was first enacted in 2013, the statute applied only to individuals who committed their crimes before the age of 18; the purpose of the statute was to align California law with then-recent court decisions identifying Eighth Amendment limitations on life without parole sentences for juvenile offenders.  In more recent years, however, the Legislature has expanded the statute to include certain young adult offenders as well.  Under the current version of the statute, most persons incarcerated for a crime committed between ages 18 and 25 are entitled to a parole hearing during the 15th, 20th, or 25th year of their incarceration.  (Pen. Code, § 3051, subd. (b).)  But not all youthful offenders are

eligible for parole hearings. The statute excludes . . . offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18. (*Id.*, subd. (h).)" (*Hardin*, *supra*, 15 Cal.5th at pp. 838–839.)

Carter asserts that since the Legislature has extended the possibility of parole to certain offenders who were under 26 when they committed their offenses, it has determined that youthful offenders under the age of 26 are less culpable than those who commit offenses after the age of 26. He therefore argues that while his LWOP sentence might not meet the test for disproportionate punishment standing alone (*In re Lynch* (1972) 8 Cal.3d 410, 424), the sentence has been rendered grossly disproportionate by the Legislature's "recognition of the possible potential reduced culpability of offenders who commit their offenses in question before they become 26 years old and the . . . new provisions for giving some such offenders youth offender parole hearings at some point."[8]

We disagree. California courts have uniformly rejected the argument that the imposition of LWOP sentences on young adults violates state and federal protections against cruel and/or

---

[8] Article I, section 17 of the California Constitution prohibits "cruel or unusual punishment." Carter does not assert an argument under the United States Constitution. However, "[t]here is considerable overlap in the state and federal approaches. 'Although articulated slightly differently, both standards prohibit punishment that is "grossly disproportionate" to the crime or the individual culpability of the defendant.' [Citation.] 'The touchstone in each is gross disproportionality.' [Citation.]" (*People v. Baker* (2018) 20 Cal.App.5th 711, 733; see also *People v. Marshall* (1990) 50 Cal.3d 907, 938.)

8

unusual punishment for the same reasons such sentences are cruel or unusual when applied to juvenile offenders. Carter acknowledges one such case, *People v. Argeta* (2012) 210 Cal.App.4th 1478 (*Argeta*). As he notes, in *Argeta*, a defendant who was 18 years old when he committed his offenses argued his sentence was the functional equivalent of an LWOP sentence. The defendant contended that, given his youth, the United States and California Supreme courts' findings that such sentences are cruel and unusual when applied to juvenile offenders applied equally to him. The *Argeta* court rejected the argument, citing the United States Supreme Court's reasoning that "while '[d]rawing the line at 18 years of age is subject . . . to the objections always raised against categorical rules . . . [, it] is the point where society draws the line for many purposes between childhood and adulthood.' (*Roper v. Simmons* (2005) 543 U.S. 551, 574; [Citation.].)" (*Id.* at p. 1482.) The *Argeta* court further noted "a line must be drawn at some point. We respect the line our society has drawn and which the United States Supreme Court has relied on for sentencing purposes, and conclude Argeta's sentence is not cruel and/or unusual under *Graham*, *Miller*, or *Caballero*."[9] (*Argeta*, at p. 1482.)

Carter attempts to distinguish *Argeta* on the ground that it was decided before the Legislature enacted section 3051, thus redrawing the "line referred to in *Argeta* . . . at 26 years of age, with respect to mental maturity . . . ." This argument is unavailing. The Legislature's decision to extend parole consideration hearings to certain young adult offenders is not an indication that the underlying sentences those offenders face

---

[9] *Graham v. Florida* (2010) 560 U.S. 48; *Miller v. Alabama* (2012) 567 U.S. 460; *People v. Caballero* (2012) 55 Cal.4th 262.

9

constitute cruel or unusual punishment in the absence of a parole hearing, or that they are otherwise constitutionally invalid. Further, even after section 3051 was enacted and subsequently amended, numerous California courts have concluded LWOP sentences, or their functional equivalent, are not cruel or unusual punishment when imposed on young adult offenders. (E.g., *People v. Acosta* (2021) 60 Cal.App.5th 769, 781–782 [rejecting cruel and unusual punishment challenge to LWOP sentence as applied to 21-year-old with autism spectrum disorder]; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1031–1032 [rejecting cruel and unusual punishment challenge to LWOP sentence as applied to 18-year-old and trial court's failure to consider his youth]; *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1220–1221 [rejecting cruel and unusual punishment challenge to LWOP sentence as applied to 18-year-old]; see also *People v. Edwards* (2019) 34 Cal.App.5th 183, 190–192 [the functional equivalent of LWOP sentence is not cruel and unusual punishment for 19-year-old]; *People v. Perez* (2016) 3 Cal.App.5th 612, 617–618 [the functional equivalent of LWOP sentence is not cruel and unusual punishment for 20-year-old].)

Indeed, we agree with the court in *In re Williams* (2020) 57 Cal.App.5th 427, 437–439 (*Williams*), which rejected an argument similar to the one Carter makes here. In addressing the appellant's argument that an LWOP sentence imposed on any 21-year-old defendant constitutes cruel or unusual punishment, the *Williams* court observed "our Supreme Court has essentially rejected that very argument in the context of the death penalty. In *People v. Flores* (2020) 9 Cal.5th 371, 429 [ ], the court acknowledged research that youths ages 18 to 21 share many of the same cognitive and developmental deficiencies as adolescents

10

under age 18.  Quoting from the court's earlier opinion in *People v. Powell* (2018) 6 Cal.5th 136, 192 [ ], the court nonetheless held that 18 is ' "the age at which the line for death eligibility ought to rest." '  If the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit the lesser LWOP sentence."  (*Williams*, at p. 439; see also *People v. Tran* (2022) 13 Cal.5th 1169, 1234–1235 [imposing the death penalty on 20-year-old does not constitute cruel and unusual punishment even considering scientific research and expansion of section 3051].)

Accordingly, we reject Carter's argument that the section 3051, subdivision (h) LWOP exclusion renders his sentence cruel or usual punishment in violation of the California Constitution.

## DISPOSITION

The order denying Carter's motion for a *Franklin*/*Cook* proceeding is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

12